UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

          *Plaintiff,*

VS.

          Case No. 19-CR-206-A

SHELBY GARIGEN,

          *Defendant,*

---

# DEFENDANT'S
# SENTENCING MEMORANDUM

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                *Plaintiff,*

VS.	                           Case No. 19-CR-206-A

SHELBY GARIGEN,

                *Defendant,*
_____

## *INTRODUCTION:*

    Defendant, SHELBY GARIGEN, by and through her attorney, James C. DeMarco, III, Esq. of Bengart & DeMarco, LLP submits the within Sentencing Memorandum in support of a sentence of probation, a period of home detention with electronic monitoring; continuation of counseling until successfully discharged and supervised release with conditions. This sentence reflects the nature and circumstances of Ms. Garigen's offense, her history and characteristics, and is sufficient but not greater than necessary to serve the purpose of sentencing set forth in United States V. Booker , 125 S.CT 738 (2005) and the United States V. Crosby 2005 WL 240916 (2nd Cir. (NY) ), 18 U.S.C 3553 (a).

## *Charges:*

    Ms. Garigen plead guilty to Possession of Child Pornography in violation of 18 USC 2252A(a)(5)(B) access with intent to view child pornography.

## *Background:*

    Ms. Garigen is married to her husband Tom, they were married on February 5, 2005 and have three young children Bennett age 11, Madeline age 9, and Olivia age 6. They reside within the state of New York County of Erie and the Town of Clarence. She takes care of the three children, and is wholly responsible for their daily care, schooling, medical appointments etc. She possesses a Bachelors and Master degree and has worked as an athletic trainer at various facilities for at least 18 years.

Ms. Garigan was born and raised in Ogdensburg, New York, a small town near the Thousand Islands. Her parents divorced by the time she was five years old. Her father was in the military and upon returning home, he suffered from severe PTSD which affected all relationships he had. He became an alcoholic and was unable to control himself during periods of intoxication. He owned a local bar and as a way of providing supervision for his young daughter he had Ms. Garigen spent a lot of time at same. He gave her a job of interacting with the patrons and acting as a waitress. Ms. Garigen cannot remember when her father was not consuming alcohol to the point of intoxication and in fact, both of her parents were heavy drinkers. It was not uncommon for them to drive Ms. Garigen and her siblings around in a drunken state.

Ms. Garigen had spent various holidays in a multitude detox units to ensure that her father saw at least some of his family all the while trying to hide this from her mother.

Both parent went on to remarry and Ms. Garigen's new stepmother was a positive role model in her life whom she enjoyed a good relationship with. Her mother remarried an abusive man who was verbally demeaning and abusive to Ms. Garigen. She has now learned that this behavior along with her experience with her father had caused her a lot of psychological damage. As a result, she became very introverted and possessed feeling of negative self-worth. Soon she developed what is now known as severe anxiety and depression at a young age. She did not understand what was wrong with her and was never offered any help. She just tried to survive the emotional and psychological abuse. She spent as much time as she could with her maternal grandmother, who tried her best to shield her from the abuse. Ms. Garigen stated that she would have never survived this period in her life but for the support and care of her grandmother.

Ms. Garigen went to college far from home to escape the toxic environment she was living in. After taking Psychology courses, she realized what she was suffering from. She was beginning to understand why she was so afraid of people, harboring feeling of negative self-worth, depression and anxiety. She knew that if there was any hope for a "normal" life she had to enroll in counseling.

She met her husband at the end of college and they became engaged in six months. Through the help of counseling Ms. Garigan had started gained confidence and valuable insight of the emotional abuse that had happened to her during her tender years.

Eventually, her father's second marriage ended while she was in college. Guilt forced her into driving back and forth to care for her father during this time

as she still felt she needed to protect him from his downward spiral. As the drive became too much, her father relocated to the Buffalo area. Ms. Garigen's younger sister was no help and her older brother had disowned her father, leaving no one else to care for him.

It was not uncommon for her father to show up drunk at Ms. Garigen's home asking for help. He had been arrested twice for DWI and Ms. Garigen was the only one who came to court to get her father help. She was constantly at Veterans Hospital, ECMC Detox Unit and at his beck and call, all while attempting to raise her young children.

Finally, she was able to get her father into the Veterans Treatment Court where he became sober for two years. Eventually, he was diagnosed with cancer and once again, it became Ms. Garigen's responsibility to get him to and from treatments at Roswell, other doctor appointments and probation hearings. She did all of this while caring for her own family. Although he was given six months to live, he lived for an additional two years. He obtained an apartment, but same was in close proximity to a bar and he started drinking again. It was at this time, Ms. Garigen's maternal grandmother who she adored, passed away. Several months later, she found her father dead in his apartment. She alone had to arrange all funeral plans, and figure out a way to pay for it as all other members of the family had disowned him.

It was during this time and Ms. Garigen's depression and anxiety came back with a vengeance and unfortunately got the best of her. Once again, she had low self-worth and reached out for professional help. She met with her counselor on a regular basis and she was prescribed medication which temporarily alleviated some of her symptoms. After several months, she was prescribed a different medication which made her symptoms worse. Soon Ms. Garigan, began feeling suicidal and knew she needed immediate help. She was immediately admitted to ECMC. Ms. Garigen was diagnosed with having Hypo-manic episodes with severe anxiety and Major Depressive Disorder. Unfortunately it was during the period of time that Ms. Garigen would make the worst decisions of her entire life.

Her marriage was not going well, feeling depressed and anxious along with losing an important family member of her family together with very low self-worth, Ms. Garigen began innocently having simple text conversations with certain 17 year young men involved in the sports teams she was an athletic trainer for. They were funny, nice and made her feel like she mattered. Although looking back, she now realizes that same were inappropriate and wishes for nothing more than to go back in time and erase them. She realizes those conversations should have never taken place and is truly sorry for any emotional or psychological

distress caused to these young men by her actions. The toll these isolated and regrettable incidents have caused Ms. Garigen are almost insurmountable but she has and continues to do her very best to address her issues.

As a result of her actions Ms. Garigan is now a convicted federal felon and will be a registered sex offender. In addition, her husband has filed for divorce, she has lost her home, her friends, her reputation which she worked so hard to achieve, her certification from the State of New York and most importantly the impact this will have on her children.

Ms. Garigan wishes the court to know that she is truly a good person and would never intentionally harm any human being. She wholeheartedly regrets what has happened. She is a loving and nurturing mother, friend and employee. She would never intentionally hurt anyone, especially a child. She has volunteered in her community and has provided help to others whenever and wherever help was needed

Ms. Garigan has been under the care and supervision of a new doctor and correct medication has been prescribed for the disorders she suffers from. She now has her disorders under control and has a feeling of normalcy.

Never in her 18 years of working as an athletic trainer has something like this ever occurred. She loved her job and was very good at it, and cared for the students she was helping. For all of the above, we respectfully as this Court's consideration and leniency.

### *Characteristics:*

Ms. Garigen's work ethic and personality is evidenced by her lack of any criminal record. She fully accepts all responsibility. She fully cooperated with investigators up to and taking a lie detector test. Ms. Garigen also offered her phone and computers for same to be searched. She gave her immediate and full cooperation in connection with all allegations brought against her.

As the letters of support (attached hereto) indicate many members of our community support Ms. Garigan and her requested sentence. They believe that Ms. Garigen's actions are an anomaly and completely out of character and that she would never become involved in any situation remotely close to what she has plead to. She is deeply shamed, remorseful and embarrassed for her actions and certainly did not realize that her actions which seemed so small and inadequate at the time,

would result in such an impact. She now fully understands and appreciates the impact that her actions had on the victims and is truly sorry.

Upon information and belief, no health professionals have expressed any concern that Ms. Garigen would repeat this offense or engage in similar activities in the future. The existence of any underlying psychological factors which led her to commit this offense are appropriate for the treatment she has been receiving.

Since her arrest Ms. Garigen has successfully completed and continues to be compliant in all programs. She has participated in weekly group sessions, she participates in one on one sessions and is on track to meet all her goals of each of her programs. She acknowledges personal responsibility for her offending behavior and no longer engages in this type of behavior. She possesses a clear understanding about how her behavior had impacted of victims. As part of her program, Ms. Garigen takes sexual history polygraph, during which she truthfully answers that she has never engaged in sexual contact with children or has viewed sexually explicit photographs of children. She has not even viewed any further photographs.

## *Natural & Seriousness of the Offense:*

The crime to which Ms. Garigen had plead guilty to is not only serious in the allegations, but in the wording. Historically, the words, "child pornography" immediately brings to mind the most vile and unspeakable behavior. In an attempt to persuade the court, these words should not be associated with what Ms. Garigen actually did or did not do. She did not produce, transfer, download or upload a single pornographic image of any child. Neither did she save, sell or buy a single image. As the court was well aware of, the 17 year old young men forwarded pictures of themselves to her. This act in no way diminishes that the pictures were actually sent to Ms. Garigen and the fact that she did nothing to thwart or stop the transmission of same. As the court is further aware, after having inappropriate text messages with these young men, it was Ms. Garigen who agreed to accept the photos. Upon information and belief there were less than 15 images in all that were sent to Ms. Garigan. The images that were forwarded to Ms. Garigan were instantly deleted by and through the mechanism in which the young men had sent them called "Snapchat". This is a device which delete images once viewed.

As stated Ms. Garigen had never been arrested, had never been accused of any behavior which would be detrimental to children and in fact was put through the New York State central registry. The check revealed no abuse, neglect or even a CPS report. Up to this event she had been a model citizen.

The court can take notice of the numerous letters of support submitted herein which exemplifies the type of person Ms. Garigen is and was.

### *Deterrence and Public Protection:*

As the presentence investigation makes abundantly clear, Ms. Garigen has no inclination towards child pornography. Upon our reading of the pre-sentence investigation it clear she acted with remorse and accepted responsibility for her poor judgment. There is no basis to think that she would ever commit a crime like this ever again. I therefor suggest that there is nothing to deter as way of public safety or a deterrent to the general public that requires further protection other than a sentence of probation, electronic monitoring, home confinement, continuation of counseling and registering as a sex offender.

### *Present Day Impression of Shelby Garigen:*

I wish to draw the court's attention as evidence of Ms. Garigan's responsibilities and facing her mental health issues head on. Attached please find correspondence received by my office from Rachel Wroblewski of Horizon Human Services, Samuel E. Von of Endeavor Health Services, and Paul Gerirtzman. These letters amplify Ms. Garigen's commitment not only to treating her mental health issues, but to become a positive role model for her two daughters and son. This type of counseling and the magnitude in which she is participating could not be completed in prison.

### *Effects on the Victims:*

A review of the victim impact statement appears to show no long lasting effects on the victims have transpired. It is Ms. Garigen's position, that she is truly grateful that her actions have not done anything that would impair these young men throughout their lives.

### *Conclusion:*

Determining what sentence to be imposed is not a matter of strict logic, however my analysis of the 3553 factors mandates a below guideline sentence. Ms. Garigen asked this court to impose a sentence of time served, a period of probation, a period home detention with electronic monitoring that is significant in the court's judgment with credit for 10 months already served on pretrial release; and a term that the court deems just and proper of supervised released with conditions that she registers as a sex offender with the state of New York and undergo any further treatment deemed necessary by the probation officer and

mental health professionals, in addition to the condition already in place. Unlike the advisory guidelines ranging up to forty six (46) months in prison, the requested sentence is significant but not greater than necessary to serve the sentencing purposes.

It should be noted that the plea in which Ms. Garigen has admitted to, is less serious than offenses congress had in mind when setting forth the suggested guidelines. Upon information and belief, Ms. Garigen is not the dangerous offender that congress had envisioned when it required such severe penalties for cases such as Ms. Garigen's. Further, incarceration is not necessary to protect the public and in fact would be a particular harsh punishment for Ms. Garigen who is currently raising her three young children.

Now that Ms. Garigan is in the correct mental health treatment which for all intents and purposes would not treated in prison. Ms. Garigen's age, family circumstances, education and employment history further points to a very low-risk of further offending. As a sex offender who has successfully completed therapy, she already has a low likelihood of reoffending or viewing any additional pictures. Further, any medical or mental health treatment Ms. Garigen will require, is best received outside of prison.

It must be noted that while Ms. Garigen has access and viewed child pornography as set forth in the statute, she did not share any of these files. There was no distribution that occurred of any of the photos viewed by Ms. Garigen.

In light of the above, in determining an appropriate sentence, this court must consider the sentence available by statute. Congress has set the statutory range of imprisonment for Ms. Garigen's offense at zero to probation to years of incarceration. The bottom of Ms. Garigen's guideline range is 36 months to 46 months after all appropriate reduction have been taken into consideration.

The sentence requested by Ms. Garigen is just improper under the circumstances presented. Upon information and belief, Congress thus not only in vision but accepted the possibility that some defendants found guilty of crimes such as Ms. Garigen's, would receive no jail time at all.

**DATED:**  Buffalo, New York
March __, 2020                                Respectfully submitted,

                                              /s/ James C. DeMarco III, Esq.

BENGART & DEMARCO LLP
Attorney for Defendant,
2655 Sheridan Drive
Tonawanda, New York 14150
(716) 838-1515
jdemarco@bengartdemarcolaw.com